Opinion filed September 9, 2021



In The

# Eleventh Court of Appeals

_____

## No. 11-19-00306-CR
_____

## RAMSEY EARL MITCHELL, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 238th District Court**
**Midland County, Texas**
**Trial Court Cause No. CR47519**

## M E M O R A N D U M   O P I N I O N

Appellant, Ramsey Earl Mitchell, was indicted for the third-degree felony offense of knowingly possessing a controlled substance, namely hydrocodone/chlorpheniramine, in an amount of more than twenty-eight grams but less than two hundred grams by aggregate weight including any adulterants and dilutants. TEX. HEALTH & SAFETY CODE ANN. § 481.117(a), (c) (West 2017). The jury convicted Appellant of the charged offense, found an enhancement allegation

to be true, and assessed Appellant's punishment at ten years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice. The trial court sentenced Appellant accordingly. In a single issue, Appellant challenges the legal and factual sufficiency of the evidence to support his conviction. We affirm.

## I. *Factual Background*

On November 17, 2015, at approximately 8:30 p.m., Detective Cristin McNulty of the Midland Police Department was on patrol and was "flagged down" by a bystander who advised that a traffic accident had occurred between Appellant and Erica Aleman. Detective McNulty parked her patrol unit at the accident scene and approached Appellant's vehicle. At the time, Detective McNulty observed that Appellant was wearing pajama bottoms and a Los Angeles Lakers jersey; he was also holding a cell phone. Appellant was alone and there were no passengers in his vehicle.

Detective McNulty testified that Appellant said that he had recently left work and was on his way to a friend's house to return the cell phone he was holding. According to Detective McNulty, Appellant claimed that he had left his personal cell phone at home. Appellant appeared nervous during the encounter and repeatedly followed Detective McNulty when she would return to her patrol unit, rather than remaining at his vehicle as instructed. Later, when Detective McNulty walked back to Appellant's vehicle, she noticed that one of the vehicle's windows was partially rolled down; she then detected the odor of marihuana. Appellant denied using marihuana and explained that the odor of marihuana was not from his vehicle; rather, the odor was from his clothing because he had been around others who had smoked marihuana. However, Detective McNulty did not detect any odor of marihuana on Appellant or his clothing.

Detective McNulty requested backup. After the backup officer arrived, Detective McNulty proceeded to search Appellant's vehicle. Upon searching

Appellant's vehicle, Detective McNulty discovered a small bottle between the front passenger seat and the center console that contained a liquid substance; the name and address on the label of the bottle had been partially removed. Detective McNulty also discovered (1) Appellant's cell phone underneath the bottle and (2) some particles of marihuana in the center console. Detective McNulty testified that Appellant claimed to be unaware of the bottle's presence. After she completed the search of Appellant's vehicle, Detective McNulty arrested Appellant and transported him to the county jail.

Appellant made a telephone call while he was detained at the county jail; the call was recorded, and the recording was admitted at trial. During the telephone conversation, Appellant stated that he knew the origin of the bottle and that it had been in his vehicle for "awhile"; however, he was unsure "if they'll accept that." Appellant believed that he would "be okay" if he could find someone who had a prescription for hydrocodone. Appellant further stated that he intended to retain a lawyer with the hope of either having the drug charge dismissed or having it reduced to a misdemeanor; otherwise, he would "take off."

Cassandra Bilyeu, a forensic chemist with the Texas Department of Public Safety, analyzed the contents of the bottle that Detective McNulty had recovered from Appellant's vehicle. Bilyeu testified that the liquid substance inside of the bottle contained hydrocodone and chlorpheniramine, a Penalty Group 3 controlled substance; the weight of the tested substance was 42.75 grams.

Although Appellant did not testify, his trial counsel presented Carol Hambright, a cab driver and close friend of Appellant, as a witness at trial. Hambright had received a ride from Appellant several months prior to his arrest and had sat in the front passenger's seat of Appellant's vehicle. Hambright stated that a passenger left a bag in a cab she had driven; two of the items in the bag were (1) the bottle that contained hydrocodone and chlorpheniramine and (2) the cell phone that

3

Detective McNulty had discovered in Appellant's vehicle. According to Hambright, the bag had "broken" when she was in her taxi and all of the items fell out. She retrieved the loose items and held some of the items in her lap while she was seated in Appellant's vehicle; she placed other items onto the seat next to her. Hambright stated that the items from the bag were "like, everywhere in [Appellant's] car." Later, and after she had exited Appellant's vehicle, she noticed that the bottle was missing. According to Hambright, she did not tell Appellant that the bottle and the cell phone had been left in his vehicle until after he was arrested.

## II. *Standard of Review – Sufficiency of the Evidence*

In his sole issue, Appellant contends that the evidence is legally and factually insufficient to support his conviction for the charged offense. We note at the outset that the distinction between the legal and factual sufficiency standards of review has been abandoned. *Brooks v. State*, 323 S.W.3d 893, 894–95 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 289 (Tex. App.—Eastland 2010, pet. ref'd) ("Accordingly, a challenge to the factual sufficiency of the evidence is no longer viable.").

Thus, we review a challenge to the sufficiency of the evidence, regardless of whether it is denominated as a legal or factual sufficiency challenge, under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks*, 323 S.W.3d at 912; *Polk*, 337 S.W.3d at 288–89. Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Zuniga v. State*, 551 S.W.3d 729, 732 (Tex. Crim. App. 2018); *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

Viewing the evidence in the light most favorable to the verdict requires that we consider all of the evidence admitted at trial, including improperly admitted

4

evidence. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). As such, we defer to the factfinder's credibility and weight determinations because the factfinder is the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Winfrey*, 393 S.W.3d at 768; *Brooks*, 323 S.W.3d at 899; *Clayton*, 235 S.W.3d at 778. This deference accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Zuniga*, 551 S.W.3d at 732; *Clayton*, 235 S.W.3d at 778. We may not reevaluate the weight and credibility of the evidence to substitute our judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Therefore, if the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326; *Merritt v. State*, 368 S.W.3d 516, 525–26 (Tex. Crim. App. 2012); *Clayton*, 235 S.W.3d at 778.

Because the standard of review is the same, we treat direct and circumstantial evidence equally. *Isassi*, 330 S.W.3d at 638; *Clayton*, 235 S.W.3d at 778; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). It is not necessary that the evidence directly prove the defendant's guilt. Rather, circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor and can, without more, be sufficient to establish his guilt. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper*, 214 S.W.3d at 13). A guilty verdict does not require that every fact must directly and independently prove a defendant's guilt. *Hooper*, 214 S.W.3d at 13. Instead, the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Id.* Therefore, in evaluating the sufficiency of the evidence, we must consider the cumulative force of all the

evidence. *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017); *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015).

### III. *Analysis*

A person commits the offense of possession of a controlled substance if he intentionally or knowingly possesses a controlled substance in the applicable penalty group without a valid prescription. *See* HEALTH & SAFETY § 481.117(a), (c). Possession is defined as "actual care, custody, control, or management." TEX. PENAL CODE ANN. § 1.07(a)(39) (West 2021). Therefore, to prove unlawful possession of a controlled substance, the State must show beyond a reasonable doubt that (1) the defendant exercised actual care, custody, control, or management over the substance and (2) the defendant knew the substance in his possession was contraband. *Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016); *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995); *Hughitt v. State*, 539 S.W.3d 531, 538 (Tex. App.—Eastland 2018), *aff'd*, 583 S.W.3d 623 (Tex. Crim. App. 2019).

Appellant contends that the State did not establish that he knowingly possessed a controlled substance because the State did not affirmatively link Appellant to the hydrocodone/chlorpheniramine that Detective McNulty found in Appellant's vehicle. Thus, Appellant relies upon the "affirmative links rule" in support of his challenge to the sufficiency of the evidence. *See Evans v. State*, 202 S.W.3d 158, 161–62 (Tex. Crim. App. 2006); *Pollan v. State*, 612 S.W.2d 594, 596 (Tex. Crim. App. [Panel Op.] 1981).

"The 'affirmative links rule' is designed to protect the innocent bystander from conviction based solely upon his fortuitous proximity to someone else's drugs." *Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005), *overruled in part on other grounds by Robinson v. State*, 466 S.W.3d 166 (Tex. Crim. App. 2015). As such, if the accused was not in exclusive possession of the location where the substance was found, it cannot be concluded that the accused had knowledge of or

6

control over the contraband unless additional independent facts and circumstances exist to affirmatively link the accused to the contraband. *Poindexter*, 153 S.W.3d at 406; *see Evans*, 202 S.W.3d at 162 n.12 (listing affirmative links recognized by the courts).[1] The "affirmative links rule" is routinely employed to establish joint possession when the accused is not in exclusive possession of the place where the contraband is found. *Poindexter*, 153 S.W.3d at 406.

The number of "links" that can be identified is not particularly significant; rather, what is controlling is the "logical force" or degree to which the "links" that, alone or in combination, do exist and tend to affirmatively link the accused to the contraband. *Evans*, 202 S.W.3d at 162. Here, the State adduced sufficient evidence to "link" Appellant to the bottle that contained hydrocodone/chlorpheniramine that was discovered in Appellant's vehicle. Such evidence, although not exhaustive, included that: (1) Appellant was alone when Detective McNulty arrived at the scene; (2) Appellant was alone when Detective McNulty searched his vehicle; (3) the bottle that contained hydrocodone/chlorpheniramine was found in Appellant's vehicle between the front passenger seat and the center console and was within his reach and was accessible to him—also, the label on the bottle had been partially removed; (4) Appellant's cell phone was found in his vehicle underneath the bottle—he had provided deceptive responses to Detective McNulty when he was asked about the location of his cell phone; (5) Appellant's demeanor, attitude, and actions at the

---

[1]Courts have identified the following non-exclusive factors as affirmative links that may establish an accused's knowing possession of a controlled substance or other contraband: (1) the accused's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the accused's proximity to, and accessibility of, the contraband; (4) whether the accused was under the influence of narcotics when arrested; (5) whether the accused possessed narcotics or other contraband when arrested; (6) whether the accused made incriminating statements when arrested; (7) whether the accused attempted to flee; (8) whether the accused made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the accused owned or had the right to possess the place where the contraband was found; (12) whether the place where the contraband was found was enclosed; (13) whether the accused was found with a large amount of cash; and (14) whether the conduct of the accused indicated a consciousness of guilt. *Evans*, 202 S.W.3d at 162 n.12.

scene were indicative of a consciousness of guilt—Appellant appeared to be nervous during his encounter with Detective McNulty, repeatedly followed Detective McNulty when she would return to her patrol unit rather than remaining by his vehicle as instructed, and appeared to be eager to leave the scene; (6) marihuana was found inside the center console of Appellant's vehicle and was within his reach and accessible to him; (7) Detective McNulty detected a noticeable odor of marihuana that emanated from Appellant's vehicle—although Appellant claimed that the source of the marihuana odor was his clothing because he had recently been in the presence of others who had smoked marihuana; (8) no one, except Appellant, had recent access to Appellant's vehicle; and (9) the statements made by Appellant during his jail telephone call indicated a consciousness of guilt—Appellant knew the origin of the bottle, that it had been in his vehicle for "awhile," and that he would "be okay" if he could locate someone who had a prescription for hydrocodone.

The jury is authorized to believe all, some, or none of any witness's testimony. *Adelman v. State*, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992); *Reyes v. State*, 465 S.W.3d 801, 805 (Tex. App.—Eastland 2015, pet. ref'd) (citing *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986)); *see Winfrey*, 393 S.W.3d at 768; *Brooks*, 323 S.W.3d at 899. Notwithstanding Hambright's testimony, when, as in this case, the evidence conflicts, the applicable standard of review requires that we presume the jury resolved any conflicts in favor of the verdict, and we defer to the jury's determination in that regard. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778. It is the jury's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. It is not our role or function to engage in or make credibility determinations. *See Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778; *Sanders v. State*, 119 S.W.3d 818, 820 (Tex. Crim. App. 2003). Therefore, we resolve any conflicting inferences that are supported by

8

the record in favor of the jury's determinations.  *Jackson*, 443 U.S. at 326; *Merritt*, 368 S.W.3d at 525–26; *Clayton*, 235 S.W.3d at 778.

Consistent with the applicable standards of review, we have carefully reviewed all of the evidence in the light most favorable to the jury's verdict. Irrespective of Appellant's contentions, we hold that the record before us contains sufficient evidence from which a rational jury could have logically inferred and found beyond a reasonable doubt that Appellant knowingly possessed a controlled substance, i.e., hydrocodone/chlorpheniramine, as charged in the indictment. Accordingly, because legally sufficient evidence supports Appellant's conviction for the charged offense, we overrule Appellant's sole issue on appeal.

## IV.  *This Court's Ruling*

We affirm the judgment of the trial court.


W. STACY TROTTER

JUSTICE


September 9, 2021

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.